IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| Brenda Yates, as Guardian for Morgan Johnson, ) ) ) Plaintiff, ) ) vs. ) ) Town of Pineville; and Anthony Gonzalez, ) Police Officer, in his individual capacity, ) ) Defendants. ) ) | C/A No. 3:25-cv-297-KDB-DCK<br><br>**FIRST AMENDED COMPLAINT**<br>(Jury Trial Demanded) |

Brenda Yates, as Guardian for Morgan Johnson, by and through her undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Anthony Gonzalez, Police Officer in his individual capacity for injuries suffered by Morgan Johnson on July 17, 2022, as well as gross negligence and negligence actions against the Town of Pineville.

**PARTIES**

1. Plaintiff Brenda Yates ("Plaintiff") is the duly appointed Guardian of Morgan Johnson. Plaintiff was appointed Guardian of Morgan Johnson by order of the Circuit Court for Prince George's County, Maryland, dated August 19, 2024, Docket Number C-16-FM-23-009229.

2. Morgan Johnson ("Ms. Johnson") is 30-years-old and a citizen of Prince George's County, Maryland.

3. At all times relevant to this Complaint, Defendant Town of Pineville (hereinafter "Defendant Pineville") has been a governmental entity established under the laws and constitution of the State of North Carolina, transacting and conducting business in North Carolina, and with a principal place of business in Pineville, North Carolina. At all times relevant to this Complaint,

the Pineville Police Department (hereinafter "PPD") was a subdivision of Defendant Pineville, and all officers with the PPD were servants, agents, and/or employees of Defendant Pineville. Defendant Pineville has purchased a liability insurance policy through the Interlocal Risk Financing Fund of North Carolina.

4.  Upon information and belief, Defendant Anthony Gonzalez Police Officer (hereinafter "Defendant Gonzalez") is a citizen of North Carolina and resides in Mecklenburg County, North Carolina, and was employed as a police officer with the PPD and was acting under color of state law at all time relevant to this Complaint. He is being sued in his individual capacity.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over the federal claims against Defendant Gonzalez pursuant to 18 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

6.  This Court further has supplemental jurisdiction over the state claims against Defendant Pineville pursuant to 28 U.S.C. § 1367 because those claims arise under the same facts as those over which the Court has original jurisdiction as described in the preceding paragraph.

7.  This Court further has personal jurisdiction over all Defendants as they reside in this District and their acts and/or omissions complained of occurred within this District.

8.  Venue is proper in the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the Defendants reside in Mecklenburg County and the acts or omissions complained of occurred within Mecklenburg County.

## FACTUAL ALLEGATIONS

9. On July 17, 2022, officers with the PPD, including Defendant Gonzalez, responded to the Willow Ridge Apartment complex in Pineville, North Carolina after Ms. Johnson called 9-1-1 regarding a domestic disturbance.

10. When officers arrived, Ms. Johnson's boyfriend informed them that she suffered from bipolar disorder and requested a Crisis Intervention Team.

11. Upon information and belief, PPD officers were familiar with Ms. Johnson, as she had a history of mental health incidents and arrests.

12. While speaking with the officers, Ms. Johnson elbowed her boyfriend and was arrested for assault.

13. After arresting Ms. Johnson and taking her to the PPD, officers placed her in a holding cell while they completed Ms. Johnson's arrest paperwork.

14. Thereafter, Defendant Gonzalez placed Ms. Johnson, who was handcuffed behind her back, in the drivers-side rear seat of a shielded marked police cruiser to transport her to the Mecklenburg County Jail.

15. Upon information and belief, Defendant Gonzalez did not secure Ms. Johnson in the backseat with the vehicle's seatbelt.

16. Around 1:55 a.m., Defendant Gonzalez was driving on I-485 approaching the I-77 interchange.

17. As Defendant Gonzalez approached the interchange, Ms. Johnson began attempting to slip out of her handcuffs.

18. Ms. Johnson's attempts to slip out of her handcuffs produced a clinking sound that was audible on Defendant Gonzalez's body-worn camera.

3

19. Notably, while the police cruiser possessed a rear-seat camera, the same was not operational at the time.

20. Upon information and belief, Defendant Gonzalez heard Ms. Johnson attempting to slip out of the handcuffs but did not pull over or otherwise stop the police cruiser to ensure that Ms. Johnson was secure in the backseat.

21. After Ms. Johnson struggled with her handcuffs, she was able to free one of her hands.

22. After Ms. Johnson freed her hand from the handcuffs, she began manually sliding the rear, drivers-side window down.

23. Notably, the police cruiser allowed Defendant Gonzalez to lock all of the cruiser's windows from the front seat, but Defendant Gonzalez had not engaged the lock.

24. Additionally, PPD had the ability to disable the rear window controls for all PPD vehicles but had not done so.

25. PPD also had the ability to place bars over the rear windows of all PPD vehicles, but had not done so.

26. Upon information and belief, Defendant Gonzalez noticed Ms. Johnson manually sliding the window down, but did not pull over or otherwise bring the police cruiser to a stop, nor did he reduce his speed.

27. As a result, Ms. Johnson was able to slide the rear window down six (6) inches and begin crawling out of the window.

28. Upon information and belief, Defendant Gonzalez noticed Ms. Johnson climbing out of the window, but did not pull over or otherwise seek to stop the police cruiser, nor did he reduce his speed.

29. Ms. Johnson then fell from the window of the police cruiser as it was traveling down I-485 at roughly 70 miles per hour (70 mph), rolling thirty (30) to forty (40) feet after hitting the ground.

30. Following this incident, Defendant Gonzalez was not put on leave by Defendant Pineville.

31. As a result of her fall, Ms. Johnson suffered significant injuries, including: a left subdural hematoma, with 1 cm left to right midline shift; a traumatic subarachnoid hemorrhage throughout the left hemisphere and sylvian fissure; bilateral frontal contusions; a right parietooccipital fracture, with overlying laceration; and a right nondisplaced calcaneal fracture.

32. The foregoing injuries required a lengthy stay in the intensive care unit.

33. Additionally, due to the swelling in her brain, Ms. Johnson had to be intubated and undergo a left sided decompressive craniectomy and subdural hematoma evacuation.

34. Ms. Johnson's brain injuries have resulted in severe and lasting effects on her cognitive ability and ability to care for herself.

35. On August 19, 2024, the Circuit Court for Prince George's County, Maryland determined that Ms. Johnson lacks sufficient understanding or capacity to make or communicate responsible decisions concerning her person, including provisions for health care, food, clothing, or shelter.

36. Because she is no longer capable of caring for herself, Ms. Johnson required the appointment of a Guardian on August 19, 2024.

**FOR A FIRST CAUSE OF ACTION**
**(Deliberate Indifference to Safety in**
**Violation of the Fourteenth Amendment)**
**(*against Defendant Gonzalez*)**

37. Plaintiff repeats and realleges the factual allegations in paragraphs 9–36 as if fully restated herein.

38. This action is brought against Defendant Gonzalez in his individual capacity, pursuant to the Fourteenth Amendment to the United States Constitution, for Defendant's violations of 42 U.S.C. § 1983.

39. At all times material hereto, Defendant Gonzalez was an employee and/or agent of Defendant Pineville and acting within the course and scope of his employment, under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant Pineville.

40. Defendant Gonzalez had an affirmative duty to provide for the safety and welfare of individuals in the custody and care of the PPD, including Ms. Johnson.

41. Defendant Gonzalez was aware that Ms. Johnson suffered from bipolar disorder and was in the midst of a mental health crisis because the same had been reported to the officers on the scene as the reason for the 911 call for service.

42. Defendant Gonzalez was aware of Ms. Johnson's serious medical needs and the risk of harm to her in her state and undertook a special duty to care for Ms. Johnson when taking her into custody.

43. Upon information and belief, upon placing Ms. Johnson in his cruiser for transport to Mecklenburg County Detention Center, Defendant Gonzalez placed Ms. Johnson in the backseat without securing her seatbelt.

44. Defendant Gonzalez had knowledge of the significant risks associated with failing to properly secure a detainee in the rear seat of a police cruiser, but failed to take efforts to ensure Ms. Johnson's safety.

45. Defendant Gonzalez had knowledge of the ability of certain detainees to slip out of handcuffs and the significant risks associated with a detainee doing so, but failed to make efforts to ensure Ms. Johnson's safety.

46. Defendant Gonzalez had knowledge of the significant risks associated with continuing to drive while a detainee was unsecured in the rear seat of a police cruiser, but failed to take efforts to ensure Ms. Johnson's safety.

47. Defendant Gonzalez had knowledge of the significant risks associated with failing to lock the rear windows of his police cruiser while transporting a detainee in the rear seat, but failed to take efforts to ensure Ms. Johnson's safety.

48. Defendant Gonzalez had knowledge of the significant risks associated with continuing to drive while a detainee is partially outside of a police cruiser, but failed to take efforts to ensure Ms. Johnson's safety.

49. Defendant Gonzalez had knowledge of the significant risks associated with continuing to drive at a high rate of speed while a detainee is partially outside of a police cruiser, but failed to take efforts to ensure Ms. Johnson's safety.

50. Defendant Gonzalez was aware that Ms. Johnson had slipped out of her handcuffs, was unsecured in the rear seat, and was lowering the window, but did not pull the police cruiser over or otherwise attempt to stop, nor did he reduce his speed.

51. Defendant Gonzalez was aware that Ms. Johnson was attempting to climb out of the window, but he did not pull the police cruiser over or otherwise attempt to stop, nor did he reduce his speed.

52. As a result, Ms. Johnson fell from the moving police cruiser, traveling at roughly seventy miles per hour (70 mph) and suffered significant injuries.

53. The conduct and actions of Defendant Gonzalez, in failing to secure Ms. Johnson in the rear seat, failing to pull over, stop, or slow the cruiser when Ms. Johnson slipped out of her handcuffs and began sliding the window down, and failing to pull over, stop, or slow the cruiser when Ms. Johnson began climbing out of the window were unreasonable, were done with deliberate indifference to and/or reckless disregard for Ms. Johnson's safety, and caused needless injury and suffering.

54. Defendant Gonzalez's conduct was objectively and subjectively unreasonable.

55. Defendant Gonzalez's deliberate indifference to Ms. Johnson's safety while she was in police custody was the cause in fact and proximate cause of Ms. Johnson's injuries.

56. These failures constitute violations of Ms. Johnson's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

57. Defendant Gonzalez is liable to Plaintiff for Ms. Johnson's injuries, pain, and suffering.

**FOR A SECOND CAUSE OF ACTION**
**(Gross Negligence)**
**(*against Defendant Pineville*)**

58. Plaintiff repeats and realleges the factual allegations in paragraphs 9–36 as if fully restated herein.

59. This is an action for gross negligence brought against Defendant Pineville under the laws of the State of North Carolina.

60. This cause of action is brought pursuant to N.C.G.S. § 160A–485.

61. Defendant Pineville has purchased a liability insurance policy through the Interlocal Risk Financing Fund of North Carolina.

62. At all times relevant to this complaint, Defendant Gonzalez was an employee and/or agent of Defendant Pineville, which operates and manages the PPD, and was acting within the course and scope of his employment, in furtherance of the interests of Defendant Pineville, and with Defendant Pineville's knowledge and consent.

63. Defendant Pineville is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions and omissions of Defendant Gonzalez.

64. Defendant Pineville, by and through its employees and agents, owed a duty to Ms. Johnson, including the special duty to keep her safe while she was in their custody during a mental health crisis and to act in a prudent and reasonable manner with regard to her health and safety in the following particulars, to wit:

    a. to properly train its officers in regard to:

        i. duties in dealing with persons in mental health crisis;

        ii. duties in providing for safe transportation of detainees;

        iii. duties in properly securing a patrol vehicle for transport of a detainee; and

        iv. duties in capturing all citizen contacts with all available recording devices;

    b. to arrange for proper crisis intervention for a mentally ill person;

    c. to arrange for safe transportation of a detainee with serious medical needs to an appropriate facility;

    d. to properly secure detainees when placing them in the rear of a PPD vehicle;

    e. to properly secure detainees being transported in PPD vehicles;

    f. to ensure that all PPD vehicles had functioning rear-seat cameras;

    g. to ensure that detainees in the rear seat were not able to lower the windows;

h.  to ensure that detainees were not able to exit a PPD vehicle or place part of their body outside of a PPD vehicle during transport;

i.  to pull over or otherwise stop a PPD vehicle when a detainee in the rear seat was not properly secured;

j.  to pull over or otherwise stop a PPD vehicle when a detainee was in the rear seat with a rear window lowered; and

k.  to pull over or otherwise stop a PPD vehicle when a detainee had any part of their body outside the vehicle.

65. Defendant Pineville also owed ministerial duties in the following particulars, to wit:

a.  to provide responsible and effective operations of the PPD;

b.  to establish proper policies, customs, and regulations of the PPD;

c.  to supervise its officers;

d.  to properly train and retrain said officers;

e.  to discipline said officers and only retain those persons fit for duty; and

f.  to properly correct and remediate any known deficiencies within its officers or the PPD.

66. Upon information and belief, prior to the incident involving Ms. Johnson, Defendant Pineville had customs or policies of the following:

a.  failing to arrange for proper crisis intervention for a mentally ill person;

b.  failing to arrange for safe transportation of a detainee with serious medical needs to an appropriate facility;

c.  failing to properly train its officers in regard to:

   i.  duties in dealing with persons in mental health crisis;

  ii. duties in providing for safe transportation of detainees;

  iii. duties in properly securing a patrol vehicle for transport of a detainee; and

  iv. duties in capturing all citizen contacts with all available recording devices;

 d. failing to properly secure detainees with mental health concerns before transport;

 e. failing to ensure that detainees are secured with a seatbelt in the rear seat of a PPD vehicle;

 f. failing to ensure that all PPD vehicles had functioning rear-seat cameras;

 g. failing to ensure that detainees were unable to lower the rear seat windows;

 h. failing to disable rear window controls in all PPD vehicle;

 i. failing to place bars over PPD vehicle rear windows;

 j. failing to ensure that detainees could not exit a PPD vehicle or place any part of their body outside of a PPD vehicle during transport; and

 k. failing to stop or slow PPD vehicles when detainees were unsecured, had access to an open window, and/or attempted to exit the vehicle or place part of their body outside of the vehicle.

67. The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of Defendant Pineville, including Ms. Johnson.

68. As such, Defendant Pineville breached its duties, including ministerial duties, owed to Ms. Johnson.

69. Defendant Pineville's failure to reprimand and intervene and/or take corrective action against its officers or within the PPD is evidence that Defendant Pineville ratified and promulgated officer misconduct and the conditions inside the PPD, and provides further evidence of its breach of duties owed to detainees of PPD, including Ms. Johnson.

70. Defendant Pineville's continued and repeated failures as described herein resulted in Defendant Gonzalez breaching the duty they owed by showing a total absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Ms. Johnson by failing to properly secure her in the cruiser's rear seat, failing to ensure that she could not lower the rear windows of the cruiser, failing to disable rear window controls in PPD vehicles or install bars over PPD vehicle rear windows, failing to ensure she could not exit or place part of her body outside the cruiser, failing to pull over, stop, or slow the police cruiser when Ms. Johnson slipped out of her handcuffs, failing to pull over, stop, or slow the police cruiser when Ms. Johnson lowered the rear window, and failing to pull over, stop, or slow the police cruiser when Ms. Johnson began climbing out of the cruiser's rear window.

71. Defendant Pineville knew or should have known of the danger posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and/or constituted the total absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

72. Defendant Pineville, by and through its duly authorized employees, owed a duty to Ms. Johnson to be reasonable in the management and conduct of the PPD.

73. Defendant Pineville, by and through its employees, including Defendant Gonzalez, breached duties owed to Ms. Johnson by failing to properly secure her in the cruiser's rear seat, failing to ensure that she could not lower the rear windows of the cruiser, failing to disable rear window controls in PPD vehicles or install bars over PPD vehicle rear windows, failing to ensure Ms. Johnson could not exit or place part of her body outside the cruiser, failing to pull over, stop, or slow the police cruiser when Ms. Johnson slipped out of her handcuffs, failing to pull over, stop,

or slow the police cruiser when Ms. Johnson lowered the rear window, and failing to pull over, stop, or slow the police cruiser when Ms. Johnson began climbing out of the cruiser's rear window.

74. Each act or omission detailed in this matter constitutes a separate occurrence.

75. Defendant Pineville's actions and omissions, by and through Defendant Gonzalez, were unreasonable, constituted the total absence of care, and breached duties owed to Ms. Johnson and actually and proximately contributed to and/or caused the severe injury sustained by Ms. Johnson.

76. Plaintiff is entitled to Judgment against Defendant Pineville for damages as to be determined by the triers of fact in this case.

## FOR A THIRD CAUSE OF ACTION
### (Negligence)
### (*against Defendant Pineville*)

77. Plaintiff repeats and realleges the factual allegations in paragraphs 9–36 as if fully restated herein.

78. This is an action for negligence brought against Defendant Pineville under the laws of the State of North Carolina.

79. This cause of action is brought pursuant to N.C.G.S. § 160A–485.

80. Defendant Pineville has purchased a liability insurance policy through the Interlocal Risk Financing Fund of North Carolina.

81. At all times relevant to this complaint, Defendant Gonzalez was an employee and/or agent of Defendant Pineville, which operates and manages the PPD, and was acting within the course and scope of his employment, in furtherance of the interests of Defendant Pineville, and with Defendant Pineville's knowledge and consent.

82. Defendant Pineville is liable for the actions and omissions of its employees and/or agents that gave rise to this action, including the actions and omissions of Defendant Gonzalez.

83. Defendant Pineville, by and through its employees and agents, owed a duty to Ms. Johnson, including the special duty to her while in their custody to act in a prudent and reasonable manner with regard to her health and safety in the following particulars, to wit:

   a. to arrange for proper crisis intervention for a mentally ill person;

   b. to arrange for safe transportation of a detainee with serious medical needs to an appropriate facility;

   c. to properly train its officers in regard to:

      i. duties in dealing with persons in mental health crisis;

      ii. duties in providing for safe transportation of detainees;

      iii. duties in properly securing a patrol vehicle for transport of a detainee; and

      iv. duties in capturing all citizen contacts with all available recording devices;

   d. to properly secure detainees with mental health concerns when placing them in the rear of a PPD vehicle;

   e. to properly secure detainees being transported in PPD vehicle;

   f. to ensure that all PPD vehicles had functioning rear-seat cameras;

   g. to ensure that detainees in the rear seat of PPD vehicles were not able to lower the windows;

   h. to ensure that detainees were not able to exit a PPD vehicle or place part of their body outside of a PPD vehicle during transport;

   i. to pull over or otherwise stop a PPD vehicle when a detainee in the rear seat was not properly secured;

j. to pull over or otherwise stop a PPD vehicle when a detainee was in the rear seat with a rear window lowered; and

k. to pull over or otherwise stop a PPD vehicle when a detainee had any part of their body outside the vehicle.

84. Defendant Pineville also owed ministerial duties in the following particulars, to wit:

a. to provide responsible and effective operations of the PPD;

b. to establish proper policies, customs, and regulations of the PPD;

c. to supervise its officers;

d. to properly train and retrain said officers;

e. to discipline said officers and only retain those persons fit for duty; and

f. to properly correct and remediate any known deficiencies within its officers or the PPD.

85. Upon information and belief, prior to the incident involving Ms. Johnson, Defendant Pineville had customs or policies of the following:

a. failing to arrange for proper crisis intervention for a mentally ill person;

b. failing to arrange for safe transportation of a detainee with serious medical needs to an appropriate facility;

c. failing to properly train its officers in regard to:

   i. duties in dealing with persons in mental health crisis;

   ii. duties in providing for safe transportation of detainees;

   iii. duties in properly securing a patrol vehicle for transport of a detainee; and

   iv. duties in capturing all citizen contacts with all available recording devices;

d. failing to properly secure detainees with mental health concerns before transport;

  e. failing to ensure that detainees are secured with a seatbelt in the rear seat of a PPD vehicle;

  f. failing to ensure that all PPD vehicles had functioning rear-seat cameras;

  g. failing to ensure that detainees were unable to lower the rear seat windows;

  h. failing to disable rear window controls in all PPD vehicles;

  i. failing to place bars over PPD vehicle rear windows;

  j. failing to ensure that detainees could not exit a PPD vehicle or place any part of their body outside of a PPD vehicle during transport; and

  k. failing to stop or slow PPD vehicles when detainees were unsecured, had access to an open window, and/or attempted to exit the vehicle or place part of their body outside of the vehicle.

86. The aforementioned failures amounted to violations of non-discretionary and non-delegable duties owed to detainees of Defendant Pineville, including Ms. Johnson.

87. As such, Defendant Pineville breached its duties, including ministerial duties, owed to Ms. Johnson.

88. Defendant Pineville's failure to reprimand and intervene and/or take corrective action against its officers or within the PPD is evidence that Defendant Pineville ratified and promulgated officer misconduct and the conditions inside the PPD, and provides further evidence of its breach of duties owed to detainees of PPD, including Ms. Johnson.

89. Defendant Pineville's continued and repeated failures as described herein resulted in Defendant Gonzalez breaching the duty they owed by showing an absence of care and/or willfully, wantonly, and recklessly disregarding the life and bodily integrity of Ms. Johnson by failing to properly secure her in the cruiser's rear seat, failing to ensure that she could not lower

the rear windows of the cruiser, failing to disable rear window controls in PPD vehicles or install bars over PPD vehicle rear windows, failing to ensure she could not exit or place part of her body outside the cruiser, failing to pull over, stop, or slow the police cruiser when Ms. Johnson slipped out of her handcuffs, failing to pull over, stop, or slow the police cruiser when Ms. Johnson lowered the rear window, and failing to pull over, stop, or slow the police cruiser when Ms. Johnson began climbing out of the cruiser's rear window.

90. Defendant Pineville knew or should have known of the danger posed by its failures illustrated in this Complaint, and that said actions and inactions were reckless and/or constituted the absence of care likely to result in violations of a detainee's rights, and as such were reasonably foreseeable.

91. Defendant Pineville, by and through its duly authorized employees, owed a duty to Ms. Johnson to be reasonable in the management and conduct of the PPD.

92. Defendant Pineville, by and through its employees, including Defendant Gonzalez, breached duties owed to Ms. Johnson by failing to properly secure her in the cruiser's rear seat, failing to ensure that she could not lower the rear windows of the cruiser, failing to disable rear window controls in PPD vehicles or install bars over PPD vehicle rear windows, failing to ensure she could not exit or place part of her body outside the cruiser, failing to pull over, stop, or slow the police cruiser when Ms. Johnson slipped out of her handcuffs, failing to pull over, stop, or slow the police cruiser when Ms. Johnson lowered the rear window, and failing to pull over, stop, or slow the police cruiser when Ms. Johnson began climbing out of the cruiser's rear window.

93. Each act or omission detailed in this matter constitutes a separate occurrence.

94. Defendant Pineville's actions and omissions, by and through Defendant Gonzalez, were unreasonable, constituted the absence of care, and breached duties owed to Ms. Johnson and actually and proximately contributed to and/or caused the severe injury sustained by Ms. Johnson.

95. Plaintiff is entitled to Judgment against Defendant Pineville for damages as to be determined by the triers of fact in this case.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by North Carolina law and the United States Constitution, including but not limited to the following:

   a. Compensatory, actual, and consequential damages to Plaintiff;

   b. Costs of this action and attorney's fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

   c. Loss of past and future support and services with interest;

   d. Loss of earnings and/or earning capacity;

   e. Punitive damages as to those causes of action where they are available; and

   f. Such other and further relief as this Court may deem appropriate.

RESPECTFULLY SUBMITTED THIS 25th DAY OF JUNE, 2025.

THOMPSON LAW FIRM

   /s/ Brian E. Thompson_____
Brian E. Thompson, Esq.
301 N. Main St., Suite 2449
Winston-Salem, NC 27101
Phone: 336-559-7530
Brian@thompsonpersonalinjury.com

STROM LAW FIRM, LLC

By: /s/ Mario A. Pacella
Mario A. Pacella
Bakari T. Sellers
Amy E. Wilbanks
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
mpacella@stromlaw.com
awilbanks@stromlaw.com

*Appearing PHV*

*Attorneys for Plaintiff*